Helen HUDSINUS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 83–2200.

United States District Court, D. New Jersey.

May 30, 1984.

Howard M. Weiner, Hamburg, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty., D. N.J. by Judy Sello, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This action challenges the Constitutionality of the requirement that recipients of

Supplemental Security Income (SSI) benefits must apply for, and accept, Social Security retirement benefits at age 62. As a result of complying with this requirement, plaintiff's cash income was increased beyond the eligibility level for SSI benefits. Plaintiff's ineligibility for SSI benefits caused her to lose collateral benefits, including Medicaid, that are available only to the "categorically needy."[1] This mandated shift in the source of plaintiff's benefits at age 62 eliminates her Medicaid coverage three years before she will become eligible for Medicare. Plaintiff alleges that the required shift from SSI to retirement benefits violates due process and equal protection, and thwarts the purpose and intent of the Social Security Act.

## JURISDICTION

Judicial review of final decisions by the Secretary of Health and Human Services is founded upon § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). That section states, in pertinent part, that the United States District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

In addition to this jurisdiction under the Social Security Act, plaintiff alleges federal question jurisdiction under 28 U.S.C. § 1331 for her Constitutional claims. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the United States Supreme Court held that 42 U.S.C. § 405(h)[2] precludes federal question jurisdiction over suits which seek to recover Social Security benefits. 422 U.S. at 756–62, 95 S.Ct. at 2462–465. Section 405(h) does not bar Constitutional challenges, but requires that they be brought under jurisdictional grants contained in the Social Security Act. 422 U.S. at 762, 95 S.Ct. at 2465. Section 405(g) authorizes judicial review of the decision of the Secretary, but does not state whether that review comprehends the consideration of Constitutional questions.

Under the Administrative Procedure Act (APA), the scope of judicial review of administrative action includes the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be ... contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Several district court decisions in other jurisdictions have held that the APA must be read *in pari materia* with the Social Security Act on the subject of judicial review.[3] Noting these decisions, the Third Circuit Court of Appeals concluded that "the standard of review in the APA is precisely the same standard of judicial

---

1. Title XIX of the Social Security Act, which established the Medicaid program, provides that the states must extend Medicaid coverage to those individuals defined to be "categorically needy" 42 U.S.C. § 1396a(10)(A). The "categorically needy" include "aged, blind or disabled individuals ... who meet the financial eligibility requirements for [Aid to Families with Dependent Children], SSI or an optional stake supplement." 42 C.F.R. § 435.4. States have the option of also providing Medicaid to those individuals defined as the "medically needy." 42 U.S.C. § 1396a(10)(C). The "medically needy" include "aged, blind or disabled individuals ... whose income and resources are above the limits prescribed for the categorically needy but are within limits set under the Medicaid state plan." 42 C.F.R. § 435.4. New Jersey has chosen to provide Medicaid coverage only to the "categorically needy."

2. "Finality of administrative determinations. The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title."
42 U.S.C. § 405(h).

3. *Couch v. Udall,* 265 F.Supp. 848 (WD.Okla. 1967); *Miller v. Ribicoff,* 195 F.Supp. 534 (W.D. S.C.1961); *Rafal v. Flemming,* 171 F.Supp. 490 (E.D.Va.1959); *Julian v. Folsom,* 160 F.Supp. 747 (S.D.N.Y.1958).

review appearing as Section 205(g) of the Social Security Act [i.e., 42 U.S.C. § 405(g) ]." *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 n. 1 (3d Cir.1971). This conclusion is in conformity with the opinions of the United States Supreme Court deciding Constitutional challenges under § 405(g) jurisdiction. *See e.g., Heckler v. Mathews,* —— U.S. ——, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Plaintiff's Constitutional challenges therefore may be considered as part of the Section 405(g) review. No independent jurisdictional basis is required.

██ The jurisdictional statement in the complaint also cites the Declaratory Judgment Act, 28 U.S.C. § 2201. This Act enlarges the range of remedies available in the federal courts, but it is not on independent source of federal jurisdiction. *E.g., Schilling v. Rogers,* 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Ragoni v. United States,* 424 F.2d 261 (3d Cir.1970).

Jurisdiction over this action therefore is founded solely upon 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff apparently began receiving SSI benefits in early 1981 on the basis of her medical disability. (Tr. 63). These benefits were in the amount of approximately $51.00 per month (Tr. 51). It is alleged that plaintiff called the Social Security Office in Newton, New Jersey on or about November 1981 to ask whether she would continue to receive Medicaid after reaching age 62 in January 1982. As a result of this call, plaintiff allegedly visited the Social Security Office and was told that she must apply for Social Security retirement benefits.

An application for retirement benefits based on her own earnings record was completed by plaintiff and an award certificate was issued on December 15, 1981. (Tr. 49). This certificate indicates that, beginning in February 1982, plaintiff would be entitled to a monthly retirement benefit on her own

record of $99.70 (Tr. 49). This certificate also states that "the benefit being awarded is the only type of benefit to which you are entitled, with the possible exception of wife's benefits." (Tr. 49).

A second award certificate, dated January 27, 1982, states that plaintiff would be entitled to a monthly wife's benefit of $104.00, for a combined total monthly Social Security retirement benefit of $203.70. (Tr. 50). With the receipt of these retirement benefits, plaintiff's income exceeded the allowable limit for SSI eligibility. (Tr. 9). Plaintiff's SSI benefits therefore were terminated. (Tr. 9).

After plaintiff became ineligible for SSI benefits, the State of New Jersey advised her that she could no longer receive Medical coverage and other benefits available only to the "categorically needy." [4] Plaintiff then filed a request for reconsideration of the Secretary's decision terminating her SSI benefits. (Tr. 51). A reconsideration conference was held and the termination of plaintiff's SSI benefits was affirmed on the ground that an SSI recipient *"must* apply for other types of benefits (including Social Security) for which he or she may be eligible." (Tr. 53).

On July 27, 1982, plaintiff filed a request for a hearing before an administrative law judge (ALJ) (Tr. 25), and a hearing was held on October 14, 1982. (Tr. 31–48). In her decision dated December 30, 1982. The ALJ stated that she was constrained to uphold the termination of plaintiff's SSI benefits:

There is no doubt that claimant's due process rights have been violated, and that 42 U.S.C. 1320 b–3 created an unequal classification in violation of the Fifth Amendment to the U.S. Constitution. It is also clear that the ultimate effect of the regulations at issue herein result in the purpose of the Act being defeated. However, the undersigned is in the unfortunate position of being without the power to rectify this inequity. As an Administrative Law Judge ap-

4. *See supra* note 1.

pointed under Title 5 of the U.S.Code, I have no authority or jurisdiction to rule on questions of constitutionality. I am therefore constrained to deny claimant's application. I find that the regulations, as they exist were correctly applied. The claimant had no choice but to apply for Title II benefits, and when her income exceeded $441.49 per month, her SSI benefits were terminated in accordance with the regulations.

(Tr. 10).

The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council on April 13, 1983 (Tr. 3). The Appeals Council did not address the Due Process and Equal Protection issues noted in the ALJ's decision.

## NEW EVIDENCE

Appended to the defendant's notice of motion for summary judgment is an affidavit of Gregory Machler, Director of Assistance Programs of the Social Security Administration, Department of Health and Human Services, Region II. An affidavit executed by the plaintiff on December 23, 1983 has also been filed in this action.

Judicial review under 42 U.S.C. § 405(g) is limited to a review of "the pleadings and transcript of the record." In regard to new evidence, section 405(g) states that:

> The court may, ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which

his action in modifying or affirming was based.

42 U.S.C. § 405(g).

The court may order the Secretary to consider additional evidence on remand, but the court cannot make findings of fact based on new evidence not considered by the Secretary. Since the affidavit of Gregory Machler contains information never submitted to the Secretary, the proper procedure generally would be to remand this case upon a showing of good cause for the failure to present this evidence to the Secretary before a final decision had been reached. This course of action will not be followed, however, because the affidavits concern factual issues that need not be decided for the purposes of this action. Plaintiff's affidavit states that she never received any notice informing her:

1. that she was required to apply for retirement benefits,
2. that her SSI benefits would be terminated and that she could appeal this termination, and
3. that ineligibility for SSI benefits would result in the loss of Medicaid coverage.

Plaintiff claims that the Secretary's alleged failure to provide notice of these facts violates the Code of Federal Regulations and the Due Process Clause of the Fifth Amendment of the United States Constitution.

## 1. Notice of potential eligibility for other benefits.

The requirement that SSI recipients apply for and, if eligible, obtain certain other benefits is expressed in the Social Security Act:

> No person shall be an eligible individual or eligible spouse for purposes of this title [42 USC §§ 1381–1383c] if, after notice to such person by the Secretary that it is likely that such person is eligible for any payment of the type enumerated in section 1612(a)(2)(B) [42 USC § 1382a(a)(2)(B) ][5] such person fails with-

---

5. "[A]ny payments received as an annuity, pension, retirement, or disability benefit, including

veterans' compensation and pensions, workmen's compensation payments, old-age, surviv-

in 30 days to take all appropriate steps to apply for and (if eligible) obtain any such payments.

42 U.S.C. § 1382(e)(2).

The Code of Federal Regulations defines the required notice to be given by the Secretary:

We will give you a dated, written notice that will tell you about any other benefits that we think you are likely to be eligible for. In addition, the notice will explain that your eligibility for SSI benefits will be affected if you do not apply for those other benefits.

20 C.F.R. § 416.210(c).

The parties agree that plaintiff never received a written notice of potential eligibility for retirement benefits. The ostensible reason for this omission is that plaintiff short-circuited the notification procedure. Plaintiff contacted the Social Security Office in Newton, New Jersey, received oral notice of the requirement that she apply for retirement benefits, and filed an application for those benefits.

■ Plaintiff's SSI benefits were not terminated because of a failure to apply for other benefits. Plaintiff applied for retirement benefits as required and the award of those benefits increased her income beyond SSI eligibility limits. The failure to provide plaintiff with written notice of the requirement that she apply for retirement benefits did not give rise to any cognizable injury to plaintiff.

**2. Notice of planned termination of SSI benefits and right of appeal.**

■ Under the Secretary's regulations, the termination of a recipient's SSI benefits should be preceeded by the issuance of a Notice of Planned Action (Form SSA–8155). Attached to the affidavit of Gregory Machler is a copy of a systems record of the computer generated notices "released" to plaintiff. This record indicates that a form 8155 was released on February 2, 1982 and

ors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits."

notes the paragraph numbers of the boilerplate language contained in that notice. Assuming, arguendo, that plaintiff did not receive the notice, that omission has not resulted in any cognizable injury to plaintiff.

The notice of planned action serves the practical purpose of informing the benefits recipient of her right to appeal before her benefits are actually terminated. An appeal, in the form of a request for reconsideration, must be filed within 60 days after receipt of the notice of planned action. If the appeal is filed within 10 days after receipt of the notice, benefit payments will be reinstated and continued for the pendency of the appeal.

Plaintiff filed a timely request for reconsideration (Tr. 51), and the termination of her SSI benefits was affirmed. If plaintiff had received a copy of form 8155, she might have filed her appeal within 10 days and thus continued to receive SSI benefits until a final decision was rendered on her appeal. Since plaintiff's appeal resulted in the affirmance of the termination of benefits, any benefits paid during the pendency of the appeal would be considered an overpayment. Under the Secretary's regulations, plaintiff would have been required to refund this overpayment to the Secretary through deductions in the amount of retirement benefits received. *See* 20 C.F.R. § 404.502.

Even assuming that plaintiff never received a copy of form 8155, that omission has not given rise to any cognizable injury to plaintiff. It therefore is unnecessary for this case to be remanded for a finding of fact as to whether or not plaintiff received the 8155 notice.

**3. Notice that ineligibility for SSI benefits would result in the loss of Medicaid coverage.**

■ The Secretary is required to give notice of planned action relating to benefits distributed by the Department of Health

42 U.S.C. § 1382a(a)(2)(B).

and Human Services. Plaintiff has cited no authority, however, for the proposition that the Secretary must also provide notice that ineligibility for SSI benefits may affect the receipt of other benefits governed by state eligibility criteria. Plaintiff does not deny that she received notice from the State of New Jersey informing her that she would no longer receive Medicaid coverage. Even if the Secretary had given notice to plaintiff regarding her Medicaid coverage, the receipt of that notice would not have enabled plaintiff to alter her eligibility status.

## PRE–TERMINATION HEARING

■ Relying upon *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), plaintiff claims that she was entitled to a hearing prior to the termination of her SSI benefits. In *Goldberg*, the Supreme Court established a right to an evidentiary hearing prior to termination of welfare benefits. Procedural due process is applicable to termination of Social Security benefits because the interest of an individual in continued receipt of those benefits is a statutorily created "property" interest protected by the Fifth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). In *Eldridge*, however, the Court held that an evidentiary hearing is not required prior to the initial termination of Social Security disability insurance benefits.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The specific dictates of due process are identified through consideration of three distinct factors:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

### 1. Private Interest at Stake.

The *Eldridge* Court's consideration of the first due process factor centered on the potential deprivation that may be created by the termination of benefits. Reviewing it's decision in *Goldberg*, the Court concluded that a welfare recipient is likely to be more needy than the recipient of disability benefits. The termination of welfare benefits may deprive an eligible recipient of the very means by which to live. The receipt of disability benefits, in contrast, is wholly unrelated to the claimant's income or support from many other sources. The Court also noted that other forms of government assistance would become available to a claimant if the termination of disability benefits places him below the subsistence level. The potential sources of temporary income available to a terminated SSI recipient establish a weaker private interest than exists when welfare benefits are terminated.

Eligibility for SSI benefits is partially needs-based. SSI benefits thus give rise to a private interest that is stronger than the interest in non-needs-based disability benefits. The termination of SSI benefits nonetheless supports a weaker private interest than the termination of welfare benefits because of the other government assistance available to an individual terminated from the SSI program.

### 2. Risk of Erroneous Deprivation.

The nature of the evidence supporting the termination of benefits is critical to consideration of the second due process factor. The termination of disability benefits is most commonly based on cessation of the recipient's disability as evidenced by "routine, standard, and unbrased medical reports by physician specialists." *Eldridge*, 424 U.S. at 344, 96 S.Ct. at 907. The Supreme Court in *Eldridge* concluded that the information necessary for deter-

mining cessation of disability is amenable to effective written presentation and that the value of an evidentiary hearing "does not appear substantial." 424 U.S. at 344 n. 28, 96 S.Ct. at 907 n. 28.

The right to a pre-termination hearing announced in *Goldberg* is distinguished on the ground that "written submissions are a wholly unsatisfactory basis for decision" in the area of welfare benefits. *Eldridge*, 424 U.S. at 344, 96 S.Ct. at 907. Unlike the sharply focused medical assessment for disability benefits, entitlement to welfare benefits involves a broader based inquiry with greater reliance on issues of witness credibility and veracity. An oral hearing allows the claimant to effectively communicate his case to the decisionmaker and mold his argument to the particular issued identified as important by the decisionmaker. *Id.*

The evidence relating to the termination of plaintiff's SSI benefits is simply the fact that the receipt of Social Security retirement benefits increased her income beyond SSI eligibility limits. There is no dispute regarding the amount of cash income attributed to plaintiff for purposes of her SSI eligibility. The evidence involves no question of credibility or veracity and is perfectly suited to determination on a written record. The risk of erroneous deprivation of benefits is *de minimus.*

### 3. Government interest.

Administrative burden and financial costs are major elements of the third due process factor.

At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost. Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found under-serving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited.

*Eldridge*, 424 U.S. at 348, 96 S.Ct. at 909.

■ The private interest in continued receipt of SSI benefits and the risk of erroneous deprivation are not so substantial in this case as to mandate the provision of a pre-termination hearing. Plaintiff's interest was sufficiently protected by the post-termination hearing.

### CONSTITUTIONALITY OF 42 U.S.C. § 1382(e)(2).

As an SSI recipient, plaintiff was required to apply for Social Security retirement benefits in accordance with the mandate of Section 1611(e)(2) of the Social Security Act:

No person shall be an eligible individual or eligible spouse for purposes of this title [42 U.S.C. §§ 1381–1383c] if, after notice to such person by the Secretary that it is likely that such person is eligible for any payments of the type enumerated in section 1612(a)(2)(B) [42 U.S.C. § 1382a(2)(B) ], such person fails within 30 days to take all appropriate steps to apply for and (if eligible) obtain any such payments.

42 U.S.C. § 1382(e)(2).

The statute creates two classes of SSI recipients defined by the type of other benefits for which they are eligible. The first class is comprised of those recipients eligible for "any payments received as an annuity, pension, retirement, or disability benefit, including veteran's compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits." 42 U.S.C. § 1382a(a)(2)(B). If SSI recipients are eligible for any of these benefits, they must obtain the benefits or automatically become ineligible for continued SSI benefits.

The second class is comprised of those SSI recipients eligible for "programs such as aid to families with dependent children (AFDC), general public assistance, any Bureau of Indian Affairs (BIA) payments, and

similar Federal, State, local or private programs." Social Security Claims Manual, Part IV, Section 12241. SSI recipients are not required to apply for and (if eligible) obtain these benefits as a condition of continued SSI eligibility.

Plaintiff claims that the different treatment accorded to these two classes of SSI recipients establishes an invidious discrimination against the first class and in favor of the second class. The United States Supreme Court repeatedly has held that the Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment. *E.g., Weinberger v. Salfi,* 422 U.S. 749, 768–70, 95 S.Ct. 2457, 2468–69, 45 L.Ed.2d 522 (1975); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

The United States Supreme Court has clearly defined the standard for evaluating statutory classifications in the area of Social Security benefit programs: "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi* 422 U.S. at 768, 95 S.Ct. at 2468, *quoting Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). There is a basic distinction underlying the Secretary's classification of other benefits into two groups. The first class of SSI recipients are those eligible for public or private benefits in the nature of contributory insurance programs. The second class of SSI recipients are those eligible for benefits in the nature of welfare programs.

The House Report accompanying the Social Security Amendments of 1972, P.L. 92–603, notes that creation of the SSI program was intended to restructure the national welfare system by replacing three State-administered programs of assistance to the aged, blind and disabled. H.Rep. No. 231, 92nd. Cong., 2d Sess. 147, *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5133 [hereinafter H.Rep. No. 231]. The provision requiring SSI recipients to apply for and (if eligible) obtain certain other benefits appears as section 1611(e)(2) of P.L. 92–603 (now codified as 42 U.S.C. § 1382(e)(2). Section 1612(a)(2)(B) of P.L. 92–603 (now codified as 42 U.S.C. § 1382a(a)(2)(B)) enumerates the types of benefits that must be obtained by any eligible SSI recipient.

In it's report, the House Committee on Ways and Means notes that, "to the extent possible, contributory social insurance should continue to be relied on as the basic means of replacing earnings that have been lost as a result of old age, disability, or blindness." H.Rep. No. 231, 146–47, *reprinted in* [1972] U.S.Code, Cong. & Ad. News 4989, 5132–33. The House Report also states that the SSI program "has been designed with a view toward providing ... [i]ncentives and opportunities for those able to work or to be rehabilitated that will enable them to escape from their dependent situations ..." H.Rep. No. 231, 147, *reprinted in* [1972] U.S.Code Cong. & Ad. News 4989, 5133. The Committee voiced its concern that benefit payments from other sources "not undermine the earnings incentive." H.Rep. No. 231, 153, *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5139. Congress could reasonably conclude that requiring SSI recipients to obtain any available welfare payments would be counterproductive in the effort to stimulate SSI recipients "to escape from their dependent situations." H.Rep. No. 231, 147, *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5133.[6]

---

6. The Secretary states that creation of the two classes of SSI recipients is justified on the ground that Congress intended to shift recipients out of benefit programs supported by tax revenues and into benefit programs derived from other sources. Public assistance programs such as AFDC are funded from general tax revenues as is the SSI program. By contrast, Social Security retirement benefits are derived from the trust fund. To force SSI recipients to apply for AFDC would thus be "illogical ... since the monies would in effect, be coming out of the

 The distinction between benefits in the nature of contributory insurance programs and those in the nature of welfare programs is not irrational in light of the purposes of the SSI legislation. Accordingly, Section 1611(e)(2), now codified as 42 U.S.C. § 1382(e)(3), does not create an invidious discrimination and does not violate the equal protection component of the Due Process Clause of the Fifth Amendment.

## CONSTITUTIONALITY OF 42 U.S.C. § 1320b–3

The Veterans' and Survivors' Pension Improvement Act of 1978 (VSPIA), 38 U.S.C. § 501 et seq., increased pension benefits for certain classes of veterans. Under 42 U.S.C. § 1382(e)(2), SSI recipients would be required to apply for and (if eligible) obtain the enhanced pension benefits or automatically forfeit SSI eligibility. The increased pension income apparently caused some veterans to exceed the SSI eligibility levels and thereby lose not only their SSI benefits but also collateral benefits such as Medicaid. In response to this unintended and unforeseen result, Congress enacted an amendment to the Social Security Act stating, in pertinent part, that SSI recipients would not be required to apply for benefits under the VSPIA if to do so would cause the recipient to lose Medicaid coverage. 42 U.S.C. § 1320b–3.

Plaintiff claims that this exemption for veterans establishes an invidious discrimination against non-veteran SSI recipients and violates the equal protection component of the Due Process Clause of the Fifth Amendment.

In attempting to increase benefits to veterans, Congress inadvertantly made it possible for some veterans to lose their Medicaid coverage. The VSPIA created an exacerbation of an existing inequity. With 42 U.S.C. § 1320b–3, Congress sought to eliminate the exacerbation [7] without addressing the basic inequity caused by requiring SSI recipients to apply for other benefits even if the claimant would thereby lose needed Medicaid coverage.

 The limited exemption provided by 42 U.S.C. § 1320b–3 neutralizes an unintended result of the VSPIA and returns veterans to the status quo existing before passage of the VSPIA. Congress did not exempt veterans from applying for basic (pre-VSPIA) pension benefits even though the receipt of those benefits also could render the veterans ineligible for Medicaid. Section 1320b–3 does not create an invidious discrimination and does not violate equal protection.

## RETIREMENT BENEFITS "CONTRACT"

Plaintiff claims that the Secretary violates due process by denying her the right to choose to receive retirement benefits beginning at age 65. By requiring plaintiff to receive retirement benefits at age 62, the Secretary has allegedly defeated "the contractual freedom to choose when to receive benefits [and] deprive[d] the claimant of a solemnly promised right." Plaintiff's brief in support of complaint, at 20.

 It is not necessary to address the possible existence and contours of the "contract" alleged by plaintiff. To the extent that there may be any retirement benefits "contract" between plaintiff and the federal government, that contract does not establish a right to receive SSI benefits without complying with SSI eligibility criteria. Plaintiff obtained retirement benefits at

---

same pocket." Defendant's reply brief, at 4. This argument does not address the fact that SSI recipients are not required to apply for welfare-type benefits from "State, local or private programs." Social Security Claims Manual, Part IV, Section 12241. Benefits from these sources would not be "coming out of the same pocket."

7. Congress intended § 1320b–3 to allow veterans "to disaffirm any entitlement to the higher VA pensions in order to continue eligibility for SSI, AFDC and Medicaid." H.R.Rep. No. 900, 96th Cong., 2d Sess. 68, *reprinted in* [1980] U.S. Code Cong. & Ad.News 1448, 1561, 1588.

age 62 in order to avoid automatic ineligibility for SSI benefits. Plaintiff may still choose to begin receiving retirement benefits at age 65. By doing so, however, she would affect her eligibility for other government programs. There is no due process violation.

## PURPOSE OF THE SSI PROGRAM

Plaintiff states that the requirement that she obtain Social Security retirement benefits at age 62 thwarts the basic purpose of the SSI program as stated in the Secretary's regulations:

> The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level.

20 C.F.R. 416.110.

Plaintiff is now receiving over $200 per month in retirement benefits instead of the $51 per month that she received under the SSI program. Plaintiff's basic complaint is not with the Secretary, but rather with the decision of the State of New Jersey to provide Medicaid coverage only to the "categorically needy."[8]

██ The interplay of federal and state eligibility criteria for social welfare programs results in some inequities. The fact that plaintiff has suffered the deprivation of Medicaid and other benefits does not itself invalidate the federal statutory scheme. However desirable it might be, the court cannot legislate a rapprochement between the state and federal programs that would result in a coordinated effort to maximize the provision of needed benefits.

The court is constrained to affirm the decision of the Secretary terminating plaintiff's SSI benefits. A judgment order is filed with this opinion.

8. *See supra* note 1.