Mabel E. ARCHULETA, Plaintiff

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

No. C86–0130–J.

United States District Court,
D. Wyoming.

March 13, 1987.

Elaine Bodurtha, Fort Washakie, Wyo., for plaintiff.

Toshiro Suyematsu, Asst. U.S. Atty., Cheyenne, Wyo., Deanna Urtel Brackett, Office of Regional Counsel, Health & Human Services, Denver, Colo., for defendant.

## ORDER AFFIRMING IN PART AND REVERSING IN PART THE FINAL ORDER OF THE SECRETARY

JOHNSON, District Judge.

The above-entitled matter came before the Court upon appeal by Mabel E. Archuleta from an adverse decision of the Appeals Council of the Department of Health and Human Services; the plaintiff appearing by and through her attorney, Elaine Bodurtha, and defendant Secretary appearing by and through his attorneys, Toshiro Suyematsu, Assistant United States Attorney for the District of Wyoming, and Deanna Ertel Brackett, Office of General Counsel, Health and Human Services.

The Court heard the arguments of counsel in support of and in opposition to the merits of said appeal and has carefully considered the record, the briefs of the parties, and all matters pertinent thereto, and having been fully advised in the premises, now FINDS:

That this is an appeal from a final decision of the Secretary of Health and Human Services denying plaintiff's request for waiver of recovery for overpayment of benefits made by the Social Security Administration to the plaintiff. Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) on the grounds that the Secretary's decision was not supported by substantial evidence nor made in accordance with the law.

On December 24, 1966, Mrs. Archuleta's husband passed away unexpectedly, leaving five minor children in her care. Upon learning from the "undertaker" that she should request Social Security benefits, Mrs. Archuleta applied for benefits and began receiving mother's benefits and children's benefits on behalf of the children still in her care. The youngest child, Gloria, was eleven years old at the time of her father's death. At the time of application, Mrs. Archuleta correctly represented to the Social Security Administration that Gloria's birthdate was September 9, 1955. (Tr. at 101). At a later point in time, this information was incorrectly listed on computer records indicating Gloria's birthdate as September 9, 1965.

Because of this computer error, Mrs. Archuleta received mother's benefits and child benefits on behalf of Gloria until September 1981 when the Administration recognized the overpayments and informed plaintiff that her benefits would be adjusted to reflect her overpayments. (Tr. at 72).

It was evidenced by the testimony of Mrs. Archuleta that with respect to each of her four older children, the benefits for a child would stop when that child reached age eighteen. Upon filling out documents sent by the Administration, the benefits would be reinstated while the child was attending college and would automatically be stopped again at the time the children reached age 22. (Tr. at 29–30). Mrs. Archuleta testified that she thought it was "funny" that the benefits did not stop when Gloria reached 18 or 22, but she just figured that Social Security had her file and knew what they were doing. (Tr. at 31).

The facts showed that Gloria and Gloria's son born in January of 1974 lived with Mrs. Archuleta for a majority of the time

between 1973 and 1981. During this time, Mrs. Archuleta supported Gloria and her son from the money she received from Social Security supplemented by income obtained from housekeeping jobs. (Tr. at 32). Gloria attended college for approximately two years after graduating from high school. In July 1980, while Mrs. Archuleta was still receiving mother's benefits and child's benefits on behalf of Gloria, she reported to the Social Security Administration that she had "0" dependent children in her care. (Tr. at 52). However, the benefits continued to be paid to Mrs. Archuleta. By letter dated January 18, 1981, Mrs. Archuleta informed the payment center in Richmond, California that Gloria was no longer entitled to receive benefits. Again, no response was given by the Administration, so that on July 18, 1981, Mrs. Archuleta again sent the payment center notification of Gloria's ineligibility. (Tr. at 48–51).

It was not until September 10, 1981 that the Social Security Administration determined that Mrs. Archuleta had received overpayments in mother's benefits amounting to $21,142.50 and child benefits amounting to $22,473.30; a total of $43,615.80. The child benefit overpayment was later reduced to $16,208.70 after Gloria's college attendance was taken into consideration, leaving a total overpaid balance of $37,351.20.

Mrs. Archuleta properly requested a waiver of these overpayments on the grounds that she was not at fault for having received the excess benefits. This request was denied by the Administration and Mrs. Archuleta then requested a hearing on the matter. After hearing before an Administrative Law Judge, Mrs. Archuleta's request for waiver was denied by decision dated January 3, 1986. In that decision, Administrative Law Judge Henry M. Paro determined that Mrs. Archuleta was not without fault in the receipt of overpayment benefits and that waiver must be denied. This decision was affirmed by the Appeals Council on April 8, 1986.

The standard of review which must be followed by this Court in reviewing the Secretary's denial of waiver is very limited. The decision of the Secretary may only be overturned if it is not "supported by substantial evidence." 42 U.S.C. § 405(g); *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985); *Byron v. Heckler*, 742 F.2d 1232, 1234 (10th Cir.1984). However, " '[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal' [citations omitted]." *Byron v. Heckler*, 742 F.2d at 1235.

The statutes and regulations are relatively clear with respect to recovery of overpayments. Title 42 U.S.C. § 404(a) requires the Secretary to recover overpaid benefits from a recipient who is not entitled to the payments. However, relief from this requirement is available under 42 U.S.C. § 404(b) which mandates waiver in certain circumstances. That section provides:

> In any case in which more than the correct amount of payment has been made, there *shall be no adjustment of payments to, or recovery* by the United States from any person who is *without fault* if such adjustment or recovery would *defeat the purpose* of this subchapter or would be *against good equity and conscience.*

(Emphasis added). See also 20 C.F.R. § 404.506.

The regulations provide that the issue of fault goes only to the claimant and does not concern the fault of the Social Security Administration. In determining the fault of a claimant, the Secretary must consider "[a]ll pertinent circumstances, including his age, intelligence, education, and physical and mental condition." 20 C.F.R. § 404.507.

> Fault on the part of the recipient
> ... depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under ... the Act, resulted from:
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.*

The record shows that Mrs. Archuleta was born on May 29, 1916 and was 69 years of age at the time of her administrative hearing. Mrs. Archuleta had only an eighth grade education and was characterized as hardworking but unsophisticated, with relatively no understanding of the technical workings of government programs. Her testimony revealed that she relied on the administration to determine her eligibility. Further, the Administrative Law Judge found that she "believed that she was entitled to benefits as a widow and that Gloria was entitled to benefits since she was still dependent. This belief and reliance on the agency were entirely understandable." (Tr. at 12) (ALJ op. at 4).

Despite these findings, the Administrative Law Judge determined that the experience with the four older children whose benefits stopped at age 18 and were reinstated until age 22 only if the child was in school, should have conveyed the significance of Gloria's age in connection to the payment of benefits. (Tr. at 13) (ALJ op. at 5).

The Administrative Law Judge found it disturbing that Gloria and her son did not live with Mrs. Archuleta at all times during the period benefits were being paid, but that no "non-dependency" reports were filed by the plaintiff. Further, the Administrative Law Judge was concerned by the fact that after Mrs. Archuleta reported "0" dependents in July 1980, she continued to receive benefits on behalf of Gloria. (Tr. at 13).

Finally, the Administrative Law Judge determined that:

[While] it is no doubt clear that claimant is unsophisticated, and hard-working, the undersigned finds it impossible to believe that she is without the intelligence or experience to appreciate the materiality

of Gloria's attainment of age 18, or age 22 or her changing dependency status. Her acquiescence in continued benefits at each point exceeds simple stoic reliance on the Administration.

(Tr. at 13) (ALJ op. at 5). Therefore, the Administrative Law Judge concluded that Mrs. Archuleta was not without fault in causing the overpayment and denied the request for waiver. (Tr. at 14) (ALJ op. at 6).

The findings of the Administrative Law Judge focus almost entirely on the fact that Mrs. Archuleta should have known that Gloria was not entitled to benefits after age 18 or, at the least, after age 22 because of her experience with her four older children. However, the Administrative Law Judge makes no effort whatsoever to determine Mrs. Archuleta's fault with respect to receipt of the overpayment of mother's benefits. The record clearly evidences that Mrs. Archuleta did not fully understand the nature of benefits which she herself was receiving. Mrs. Archuleta testified at the administrative hearing regarding these benefits:

Q. What was your understanding of—of why you're able to get Social Security Benefits?

A. I thought it was for the death of my husband.

Q. Was there any more—

A. No.

Q. —that you understood about it? Did you—did it have anything to do with having the children, at home?

A. Well, yes I was take care of the children and for the death of my husband—becoming a widow.

Q. Okay. Do you remember anyone explaining to you, the reasons ...

(Tr. at 24).

CLAIMANT: I figured it was—that they would have sent some files on her, I thought it was unusual, and yet I thought, well maybe this was what was to be continued, at that *I was still receiving—benefits as a widow.*

(Emphasis added). (Tr. at 31).

Q. What's your understanding, now, in regards to widows benefits or mothers benefits?

A. Is there a mother's benefit, I was never informed of a mother's benefit. Mother's benefit was to begin with, when I was having the care of the children, and the widow's benefit, which I never been informed of.

Q. So, you really don't understand it now?

A. No, there was never no information on the widow's benefit.

(Tr. at 52, 53).

While Mrs. Archuleta's testimony is somewhat contradictory, even the Administrative Law Judge at one point in his findings mentions that Mrs. Archuleta was under the mistaken belief that she was receiving widow's benefits. (Tr. at 12) (ALJ op. at 4). Other than this lone comment, there is no discussion nor evidence in the record to indicate that Mrs. Archuleta should have known she was not entitled to the mother's benefits she was receiving. Nothing in the record indicates that she should have been knowledgeable of her entitlement, or lack thereof, to mother's benefits based on the experiences with the four older children.

Certainly the Administrative Law Judge's conclusion that Mrs. Archuleta was not without fault in the receipt of all overpaid benefits based on her previous experience with the four other children is not supported by substantial evidence; that being

[S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richard v. Perales*, 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971).

Rather, it is the contrary conclusion which is supported by substantial evidence. Not only does Mrs. Archuleta's lack of understanding of the mother's benefits support a non-fault finding, but also the general effect of the operation of the "family-maximum" provisions would not have led Mrs.

Archuleta to realize she was not entitled to the benefits she was receiving.

Because of the effect of the family-maximum benefit provisions, Mrs. Archuleta would not necessarily have experienced reductions in mother's benefits when each of the older children reached age 18. See 20 C.F.R. § 404.304(d); § 404.342; § 404.403; and § 404.404. (Tr. at 78–100). Therefore, it is an unreasonable conclusion, unsupported by substantial evidence, that Mrs. Archuleta should have known she was not entitled to mother's benefits despite Gloria's age.

■■■ Based on the foregoing, the decision of the Secretary via the Administrative Law Judge finding that Mrs. Archuleta was not without fault with respect to the $21,142.50 in overpayments for mother's benefits, must be reversed as it is not supported by substantial evidence. The denial of a waiver as to the overpayment of $16,-208.70 in child's benefits, however, is supported by substantial evidence and is not contrary to law and should, therefore, be affirmed.

■■ Having found that Mrs. Archuleta is not at fault for having received overpayments of mother's benefits, it is necessary to determine whether repayment of the mother's benefits would defeat the purposes of Title II or would be against equity or good conscience.

Under the regulation, defeating the purpose of Title II means:

to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs.

20 C.F.R. § 404.508(a).[1] An adjustment or recovery will defeat the purposes of the act where a person

---

**1.** Ordinary and necessary expenses include: (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under Title XVII), taxes, installments payments, etc.; (2) Medical, hospitalization, and other similar expenses; (3) Expenses for the support of others for whom the individual is legally responsible; and (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

from whom recovery is sought needs substantially all of his current income (including Social Security monthly benefits) to meet current ordinary and necessary living expenses.

20 C.F.R. § 404.508.

Presently the Social Security Administration is withholding Mrs. Archuleta's entire monthly benefit payment of $476.00 in order to recover the overpayments. (Tr. at 12, 33). A letter dated May 20, 1985 from the Social Security Administration indicates that monthly benefits will be reinstated after April 1991 at $507.00 per month. Mrs. Archuleta's monthly income if Social Security benefits were being paid would be $765.38, while her income without Social Security benefits would only total $289.38 per month.

| Social Security | $476.00 |
| Black Lung Benefits | 235.00 |
| interest | 54.38 |
| total | $765.38 |
| without present recoupment. | |
| Black Lung Benefits | $235.00 |
| interest | 54.38 |
| total | $289.38 |
| with present recoupment. | |

Mrs. Archuleta testified at the administrative hearing that her estimated expenses for an average month were as follows:

| mobile home lot rent | $125.00 |
| food | 100.00 |
| clothing | 100.00 |
| utilities | 106.50 |
| miscellaneous household expenses | 20.00 |
| Blue Cross/Blue Shield | 35.00 |
| J.C. Penny's medical insurance | 10.00 |
| automobile insurance | 20.00 |
| Medicare | 20.00 |
| mobile home insurance | 12.00 |
| prescription drugs | 20.00 |
| other medical | 5.00 |
| dental | 8.00 |
| eye care | 6.00 |
| transportation | 100.00 |
| total | $687.50 |

(Tr. at 33–41).

Mrs. Archuleta's nonexcludable assets at the time of hearing totaled $12,651.86.

| cash on hand | $ 25.00 |
| checking account | 231.75 |
| savings account | 7,895.11 |
| one-half interest in time certificate | 4,500.00 |
| total | $12,651.86 |

(Tr. at 42–45).

In order to meet her ordinary and necessary living expenses, Mrs. Archuleta has been forced to withdraw monies from her savings account. (Tr. at 170, 174). Clearly, under the applicable standards, Mrs. Archuleta needs substantially all of her income including Social Security benefits to meet her ordinary and necessary living expenses. Therefore, recovery of the mother's benefits would certainly defeat the purpose of the act.

Finally, it is necessary to determine if recovery of the overpayments would be "against equity and good conscience." The regulations, 20 C.F.R. § 404.509, provide that the terms "against equity and good conscience" means

> that adjustment or recovery of an incorrect payment (under title II or title XVII) will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right ... or changed his or her position for the worse.... In reaching such a determination, the individual's financial circumstances are irrelevant.

The testimony showed that Mrs. Archuleta used the Social Security payments she received to support herself, her daughter, Gloria, and Gloria's son. Mrs. Archuleta testified that had she not been receiving those benefits, she would have either attempted to find more domestic employment or would have sought aid from welfare programs. (Tr. at 46).

Furthermore, when Mrs. Archuleta turned 60, she would have actually been eligible for widow's benefits at a reduced rate, 42 U.S.C. § 402(e), if she had not been receiving mother's benefits.

Based on the foregoing, this Court is of the opinion that Mrs. Archuleta has given up other valuable rights in reliance upon the receipt of the overpayment of mother's benefits. Had Mrs. Archuleta understood that she was not entitled to the mother's benefits during the years in question, she could have received other types of public

assistance, sought additional employment, and could have applied for widow's benefits in 1976 when she reached age 60 and then not have found herself in the position of owing thousands of dollars to the Social Security Administration. Recovery under these circumstances would assuredly be against all good conscience and equity.

Having found that Mrs. Archuleta was not at fault in the receipt of overpaid mother's benefits, and having further found that recovery despite of a no-fault determination would defeat the purposes of Title II and be against equity and good conscience, this Court determines that the Secretary's denial of waiver as to the $21,142.50 in mother's benefits must be set aside and waiver granted based on all the foregoing reasons and discussion.

Lastly, this Court observes that 42 U.S.C. § 404(a) empowers the Secretary to promulgate regulations prescribing the method of adjustment and recovery of benefits. The corresponding regulation, 20 C.F.R. § 404.502(a), requires the total amount of monthly benefits to be withheld until overpayment of benefits is recouped by the Administration, except as provided in subparagraphs (c) and (d). Subparagraph (c) allows for recovery and adjustment to benefits by withholding only a portion of an individual's monthly benefit

> [W]here it is determined that withholding the full amount each month would 'defeat the purpose of title II,' i.e. deprive the person of income required for ordinary and necessary living expenses (see § 404.508),....

This adjustment may be accomplished by withholding not less than $10.00 per month.

> However, partial monthly recovery [w]ill not be available if the overpayment was caused by the individual's intentional false statement or representation, or willful concealment of, or deliberate failure to furnish, material information.

20 C.F.R. § 404.502(c)(2).

While at least one court has determined that this provision lies entirely within the discretion of the Secretary, see *Elliott v. Weinberger*, 371 F.Supp. 960 (D. Hawaii 1974), neither the provision nor its implementation can be immune from judicial review.

The Administrative Law Judge made no findings or conclusions regarding the withholding of the entire monthly benefits. Rather, that decision was made pursuant to a "special determination" dated December 31, 1984, (Tr. at 90–94), wherein the District Manager after a "personal conference" with Mrs. Archuleta on November 30, 1984, ruled that:

> The overpayment should be recovered by the return of the total $37,351.20, overpayment within thirty (30) days. Failure to remit within the 30 days will result in total withholding of the Social Security check until repayment is made.

(Tr. at 94). This "special determination" makes no attempt to review whether Mrs. Archuleta's circumstances merit exception and only partial withholding.

As previously discussed, Mrs. Archuleta needs substantially all of her Social Security benefits to meet her monthly ordinary and necessary living expenses. While Mrs. Archuleta is not to be relieved of the repayment of $16,208.70; to withhold her entire monthly benefits until this amount is repaid, clearly "defeats the purpose of Title II."

Furthermore, the finding that Mrs. Archuleta was not without fault in the receipt of the overpayments, certainly does not rise to a level that can be considered *intentional, willful,* or *deliberate,* nor is there evidence in the record to support such a conclusion. Mrs. Archuleta's failure to notify the Social Security Administration of Gloria's age, at most can be said to amount only to negligence.

■ The circumstances of Mrs. Archuleta's case certainly favor the treatment prescribed in 20 C.F.R. § 404.502(c) for partial withholding. The Secretary's decision to withhold the entire monthly benefit without even considering whether Mrs. Archuleta's situation fits within the criteria announced for partial withholding is a decision which is unsupported by substantial evidence. Furthermore, the Secretary failed to follow the correct legal standard—that is, proper

application of his own regulations; see *Byron v. Heckler,* 742 F.2d at 1235, and under the facts of the present case has clearly abused his discretion in the application of 20 C.F.R. § 404.502. For these reasons, the Secretary's decision to withhold Mrs. Archuleta's entire monthly benefits until overpayment has been recouped must be overturned. See also *Letz v. Weinberger,* 401 F.Supp. 598, 601 (D.Colo.1975); *Hudsinus v. Heckler,* 587 F.Supp. 814, 816–817 (D.N.J.1984); *Martin v. Secretary H.E.W.,* 492 F.Supp. 459, 461 (D.Wyo.1980); *Hines v. Weinberger,* 395 F.Supp. 1215, 1218–1219 (D.Wyo.1975).

Therefore, this Court holds that in keeping with the spirit of the Social Security Act and based on Mrs. Archuleta's financial state and level of fault, the Secretary may only make a partial adjustment to Mrs. Archuleta's monthly benefits in collecting the overpayment. This Court further determines that the Secretary may withhold no more than $150.00 per month, but not less than $10.00 per month of Mrs. Archuleta's benefits, until such time as the child benefits of $16,208.70 are repaid to the Social Security Administration. Thereafter, full benefits should resume.

In *White v. Heckler,* 774 F.2d 994, 996 (10th Cir.1985), the Tenth Circuit Court of Appeals stated:

> The power conferred by 42 U.S.C. § 405(g) on the district courts to enter orders affirming, modifying or reversing the decision of the Secretary includes the authority to order such appropriate relief as retroactive and continuing benefits.

Along these same lines, this Court is persuaded that partial adjustment of benefits constitutes appropriate relief in this matter.

NOW, THEREFORE, IT IS

ORDERED that the Secretary's decision denying waiver of the repayment of $16,208.70 in child's benefits, be, and the same is, hereby affirmed; it is

FURTHER ORDERED that the Secretary's decision denying waiver of the repayment of $21,142.50 in mother's benefits, be, and the same is, hereby reversed; it is

FURTHER ORDERED that the Secretary make only a partial adjustment to Mrs. Archuleta's monthly benefits by withholding an amount not to exceed $150.00 per month, but not less than $10.00 per month; it is

FURTHER ORDERED that payment of the adjusted monthly benefits to Mrs. Archuleta resume as of the next monthly pay period immediately following the date of this Order.